LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

YESENIA ROJO URIBE, *on behalf of herself and all others similarly situated*,

                     Plaintiff,

-against-

MOBILE CITY NY, LLC,
JOHN DOE CORPORATIONS 1-100
PARAS CHHABRA, PREET CHHABRA,
WINKY CHHABRA,VICTOR TREJO,
EMILY MARTINEZ, and
VERONICA ANDUJAR,

                     Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

JURY TRIAL DEMANDED

---

       Plaintiff YESENIA ROJO URIBE ("Plaintiff") on behalf of herself and all others similarly situated, by and through her undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants MOBILE CITY NY, LLC, and JOHN DOE CORPORATIONS 1-100 (the "Corporate Defendants") and PARAS CHHABRA, PREET CHHABRA, WINKY CHHABRA, VICTOR TREJO, EMILY MARTINEZ, VERONICA ANDUJAR, (the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") states as follows:

## <u>INTRODUCTION</u>

     1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§201 *et. seq.* ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages, (3) statutory penalties, and (4) attorneys' fees and costs.

3.    Plaintiff further alleges that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Plaintiff is entitled to recover from Defendants creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys' fees and costs.

4.    Plaintiff further alleges that, pursuant to New York City Human Rights Law Administrative Code of City of NY § 8-107 ("NYCHRL"), Plaintiff is entitled to recover from Defendants for creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.    Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.    At all times relevant herein, Plaintiff was and is a resident of the State of New York,

Queens County.

8.      Defendants own and operate a chain of approximately 34 Sprint authorized cell phone and cellular accessories retail stores in New York and New Jersey, doing business under the trade name "Mobile City." A list of current locations from Defendants' website[1] is submitted herewith as Exhibit 1.  Each of the locations are individually owned and operated by a JOHN DOE CORPORATION.

9.      All of the Corporate Defendants' locations, including specifically but without limitation all of the locations listed in Exhibit 1, are operated as a single enterprise ("Mobile City Stores"), as demonstrated by the following facts:

   a.   The Mobile City Stores are engaged in related activities, share common ownership and/or management, offer substantially the same items for sale, and have a common business purpose.

   b.   The Mobile City Stores are commonly owned, managed and headquartered at the 14-34 110th Street, Suite 201, College Point, New York.

   c.   The College Point Office is listed as the contact point for all of the Mobile City Stores on the enterprise's website.

   d.   The Mobile City Stores were advertised jointly as a common enterprise on Defendants' website as indicated in Exhibit 2.

   e.   The Mobile City Stores shared a common trade name and logo, both as licensed retailers of Sprint products and under the Mobile City name.

   f.   Corporate Defendants implemented the same or similar timekeeping and payroll policies complained of herein throughout the common enterprise of the Mobile City

---

[1] https://www.sprint.com/storefronts/bl/all-businesses/?bg=mobile-city-ny#

Stores.

g.  Defendants' employees move interchangeably between the Mobile City Stores as needed, and Defendants provide substantially the same terms of employment to employees at all locations.

10.  At all times relevant herein, Defendant MOBILE CITY NY, LLC was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its headquarters located at at 14-34 110th Street, Suite 201, College Point, New York. Each John Doe Corporation is controlled and operated by Defendant MOBILE CITY NY, LLC.

11.  Individual Defendant PARAS CHHABRA is an owner and principal of each of the Corporate Defendants. Individual Defendant PARAS CHHABRA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant PARAS CHHABRA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Individual Defendant PARAS CHHABRA directly regarding any of the terms of their employment, and Individual Defendant PARAS CHHABRA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant PARAS CHHABRA exercised functional control over the business and financial operations of all Corporate Defendants. Individual Defendant PARAS CHHABRA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and

could reprimand employees

12.     Individual Defendant PREET CHHABRA is an owner and principal of each of the Corporate Defendants. Individual Defendant PREET CHHABRA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant PREET CHHABRA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Individual Defendant PREET CHHABRA directly regarding any of the terms of their employment, and Individual Defendant PREET CHHABRA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant PREET CHHABRA exercised functional control over the business and financial operations of all Corporate Defendants. Individual Defendant PREET CHHABRA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

13.     Individual Defendant WINKY CHHABRA is an owner and principal of each of the Corporate Defendants. Individual Defendant WINKY CHHABRA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant WINKY CHHABRA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times,

employees could complain to Individual Defendant WINKY CHHABRA directly regarding any of the terms of their employment, and Individual Defendant WINKY CHHABRA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant WINKY CHHABRA exercised functional control over the business and financial operations of all Corporate Defendants. Individual Defendant WINKY CHHABRA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

14.     Individual Defendant VICTOR TREJO was and is a manager and supervisor of the Mobile City store located at 8120 Northern Boulevard, Queens, New York. Individual Defendant VICTOR TREJO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Individual Defendant VICTOR TREJO directly regarding any of the terms of their employment, and Individual Defendant VICTOR TREJO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant VICTOR TREJO exercised the power and authority to supervise and control Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

15.     Individual Defendant EMILY MARTINEZ was and is a manager and supervisor of the Mobile City store located at 3919 103rd Street, Queens, New York. Individual Defendant EMILY MARTINEZ exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Individual Defendant EMILY MARTINEZ directly regarding any of the terms of their employment, and

Individual Defendant EMILY MARTINEZ would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant EMILY MARTINEZ exercised the power and authority to supervise and control Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

16.     Individual Defendant VERONICA ANDUJAR was and is the district manager and supervisor of the Mobile City store located at 3919 103rd Street, Queens, New York. Individual Defendant VERONICA ANDUJAR exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Individual Defendant VERONICA ANDUJAR directly regarding any of the terms of their employment, and Individual Defendant VERONICA ANDUJAR would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant VERONICA ANDUJAR had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

17.     At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

18.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt retail sales-persons

employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

21.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.    Plaintiff brings claims for relief as a collective action pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt retail sales-persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("Class" or "Class Members").

23.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to Defendants' corporate practices of (i) failing to pay wages due to time-shaving, (ii) failing to provide wage statements per requirements of the New York Labor Law, and (iii) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures

26.    Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.    Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e.    Whether Defendants paid Plaintiff and Class members the proper wage for all hours worked;

f.    Whether Defendants provided proper wage statements informing Plaintiff and all non-exempt employees of information required to be provided on wage statements under the New York Labor Law; and

g.    Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law

## STATEMENT OF FACTS

31.    In or around September 2017, Plaintiff YESENIA ROJO URIBE was hired by Defendants as a retail sales employee at Defendants Mobile City located at 8120 Northern Boulevard, Jackson Heights, NY 11372. In August 2018, after complaining about Defendant Victor Trejo's sexual harassment, Plaintiff was transferred to the Mobile City located at 3919 103rd Street, Flushing, NY 11368. Plaintiff's employment was terminated in or around June 4, 2019.

32.    Although Plaintiff worked primarily at the "Mobile City" located at 8120 Northern Boulevard, Jackson Heights, NY 11372 and then at the "Mobile City" located at 3919 103rd Street, Flushing, NY 11368, Plaintiff was reqired to work interchangeably at all of Defendants locations as needed.

33.    Throughout her employment, Plaintiff was compensated at the New York City minimum wage rate. Plaintiff was also eligible for commissions if she met sales thresholds of 40 new lines, 30 upgrades and 20 tablets per month, but Plaintiff received commissions on a rare and sporadic basis. If Plaintiff achieved these thresholds, she would be compensated with $5 per sale. However, if any customer cancelled within 90 days of the sale, Defendants would revoke the comission.

34.    Throughout her employment with Defendants, Plaintiff's typical work schedule was five (5) or six (6) days a week, from 2:00 p.m. until 9:00 p.m.,for a total of thirty-five (35) to forty-two (42) hours per week.

35.    Throughout Plaintiff's employment with Defendants, Defendants had several timekeeping and payroll policies that functioned to reduce the paid hours of Plaintiff and others similarly situated in violation of the FLSA and NYLL.

36.     From the start of her employment until August 2018, Defendants deducted a thirty (30) minute meal break from Plaintiff's time each workday, but Plaintiff was required to work through the break approximately three times per week. Plaintiff was time-shaved approximately one and a half (1.5) hours per week due to Defendants meal break policy.

37.     Starting in August 2018 until the end of her employment, Defendants required Plaintiff to work off the clock after her scheduled shift ended organizing inventory, counting sale, and other sidework, for thirty (30) minutes to one (1) hour, approximately three (3) times a week. Furthermore, Defendants would instruct Plaintiff to clock out for fifteen (15) to twenty (20) minutes at a time when there were no customers. This happened approxiamtely three (3) times per week. This led to Defendants time-shaving approximately two hours and fifteen minutes (2.25) to four (4)  hours per week for off-the-clock work.

38.     Finally, approximately three (3) times per week, Defendants required Plaintiff to travel to other Mobile City locations to cover for employees who were absent or when those locations were busy. Plaintiff was required to clock out, drive to the next Mobile City location, and clock back in. It took Plaintiff approximately thirty (30) minutes to drive to the other Mobile City locations. As a result, Plaintiff suffered from approximately one and a half (1.5) hours per week of unpaid travel time.

39.     As a result, from the start of Plaintiff's employment to August 2018, Plaintiff suffered approximately three (3) hours per week. Starting in August 2018 to the end of her employment, Plaintiff suffered approximately three hours and forty-five minutes (3.75) to five and a half (5.5) hours of time-shaving due to Defendants policies. Based on her direct observations and conversations with co-workers, Defendants' failure to pay Plaintiff for her worked lunches, travel time, and off-the-clock work were pursuant to the same policies suffered by FLSA Collective

Plaintiffs and Class Members.

40.     Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and annually thereafter. Plaintiff did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

41.     Plaintiff and Class members received wage statements that were not in compliance with the New York Labor Law. Plaintiff and Class members received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation.

42.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to Defendants illegal time-shaving policies and off-the-clock policies.

43.     Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under the New York Labor Law.

44.     Defendants knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiff and Class members at the beginning of employment and annually thereafter, in violation of the NYLL.

45.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

46.     In addition to the wage and hour violations, Defendants also created, fostered, and subjected Plaintiff to a hostile work environment in the form of constant sexual harassment.

47.     While working at the Northern Boulevard Store, Plaintiff was subject to constant sexual harassment from her store manager, Victor Trejo.  In or around early 2018, Victor Trejo began making romantic advances towards Plaintiff by way of flirtacious comments and behavior.

Plaintiff was not interested in Victor Trejo but was concerned about her job, and struggled to balance resisting his advances while remaining in his good graces.

48.     Victor Trejo created opportunities throughout the work day to isolate and attempt to talk to Plaintiff.  Victor Trejo would follow Plaintiff to the locker area in the break room, and position himself as if to block her from leaving while he talked to her. Victor Trejo would also follow Plaintiff to the bathroom, and attempt to talk to her as she waited to use the facilities.

49.     When Plaintiff did not respond positively to his advances, Victor Trejo became more aggressive.  He called Plaintiff into multiple private, one-on-one meetings, wherein he would sit extremely close to Plaintiff and touch or attempt to touch her in a sexual manner.  On at least one occasion during these "meetings," Victor Trejo touched Plaintiff's breasts and put his hands under her shirt.  Plaintiff told Victor Trejo to stop, but felt pressured to let him do as he wished for the good of her job.

50.     After a few months of Plaintiff resisting his advances, Victor Trejo began to treat her in a disproportionately poor manner.  Beginning in or around summer 2018, Victor Trejo would send Plaintiff home from work early (after only about 4 hours of her scheduled 7-hour shift) if she had not yet sold a new service plan.  Plaintiff never saw or heard of Victor Trejo sending any of the other employees of the Northern Boulevard Store home early under such circumstances.  Plaintiff understood that she was being sent home early as punishment for not complying with Victor Trejo's advances.

51.     On or around August 3, 2018, Plaintiff spilled some coffee at the Northern Boulevard Store and left without cleaning it up.  That evening, Trejo texted Plaintiff the following message:



52.     Roughly translated, the text message reads: "Tomorrow I am going to hit that ass [for] not cleaning."  Plaintiff understood the peach emoji to be a sexualized symbol for her buttocks.  Plaintiff further understood "c*^}}" to be a censored version of "culo," a Spanish vulgarity for the buttocks.  Plaintiff never heard of Victor Trejo talking about any other employee's culo or using the peach emoji in reference to them.

53.     This harassment was a source of extreme physical, mental, and emotional discomfort for Plaintiff.  Throughout her time at the Northern Boulevard Store, Plaintiff felt unsafe, physically unwell, depressed, anxious, and exhausted from Victor Trejo's behavior.  Facing such treatment on a daily basis seriously disrupted Plaintiff's work and altered her working conditions.

54.     On or around August 27, 2018, Plaintiff approached Victor Trejo to ask for a weekend off.  Trejo came extremely close to Plaintiff, and told her to come with him to the back room that night, and that "if it's good," he would give her the weekend off.  Plaintiff understood this to mean that Trejo was inviting her to have sex with him, and that if he found her sexually satisfactory he would reward her with the weekend off.  Plaintiff subsequently withdrew her request for time off.

55.     After the time-off incident, Plaintiff complained to her district manager, Veronica Andujar, about Victor Trejo's behavior.  Veronica Andujar responded to Plaintiff's complaint by requiring her to relocate to the Corona Store. To Plaintiff's knowledge, Victor Trejo was never disciplined for his behavior in any way.

56.     After being relocated to the Corona Store, Plaintiff felt that she was treated worse

than other employees.  Plaintiff understood this to be because she had complained about Victor Trejo's behavior.

57.     In or around spring 2019, Plaintiff filed a charge with the New York City Police Department against Victor Trejo for his behavior.  Following Plaintiff's police report, which she did not inform any Mobile City employee about, the hostility towards her at the Corona Mobile City Store became noticeably worse.

58.     In or around June 2019, Plaintiff took a work-approved vacation to Florida. Plaintiff's return flight was delayed through no fault of Plaintiff's, and Plaintiff contacted the Corona Mobile City Store manager, Emily Martinez, and informed her that she (Plaintiff) would be returning to work later than she anticipated because of the flight delay out of her control.

59.     On or around June 4, 2019, Veronica Andujar contacted Plaintiff and told her that she (Plaintiff) was fired.  The official explanation for Plaintiff's termination was that she had returned to work late after her vacation.  However, this reason is pretextual.  The real reason Plaintiff was fired was in retaliation for her complaints to Defendants and the police report about Victor Trejo.

60.     Plaintiff was and continues to be highly traumatized by her experiences with Defendants, and continues to suffer from extreme stress and depression as a consequence.

**FIRST CAUSE OF ACTION**
**(FLSA Collective Action against all Defendants)**

61.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

62.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

63.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

65.     At all relevant times, the Defendants engaged in a policy and practice of refusing to compensate Plaintiff and FLSA Collective Plaintiffs for all hours that they worked each week due to a policy of time-shaving.

66.     Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

67.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

68.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

69.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to time-shaving, and an equal amount as liquidated damages.

70.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION
### (NYLL Class Action against all Defendants)

71.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

72.    At all relevant times Plaintiff and the other Class members were employees of the Corporate Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

73.    At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the NYLL.

74.    At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiff and the other Class members.

75.    As alleged herein, Plaintiff and the other Class members regularly worked hours (including overtime hours) for Defendants for which they were not properly paid, in violation of the NYLL.

76.    Defendants also failed to provide Plaintiff and the other Class members with accurate wage statements and wage and hour notices, as required under the NYLL.

77.    Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to pay Plaintiff and the other Class members all of the wages they were due (including regular, minimum, and overtime wages) when Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

78.    As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular and overtime wages due to Defendants policy of time-shaving. Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated

damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## THIRD CAUSE OF ACTION
### (NYHRL Discrimination against all Defendants)

79.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

80.    At all relevant times, Plaintiff was an employee within the meaning of the NYHRL.

81.    At all relevant times, the Corporate Defendants, as a joint enterprise, were and continue to be an employer within the meaning of the NYHRL.

82.    At all relevant times, the Corporate Defendants had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYHRL.

83.    Section 296(1)(a) of the NYHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

84.    Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

85.    Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

86.    Defendants violated the NYHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

87.    This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

88.    The hostile work environment was sufficiently severe and pervasive to

unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

89.    Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it.  Specifically, Plaintiff complained to management personnel about the abuse she was subject to, but management took no steps to stop it.  Indeed, rather than address the abuse against Plaintiff, Defendants required her to relocate, and therafter terminated her on a pretextual basis.

90.    The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYHRL.

91.    The Corporate Defendants' termination of Plaintiff after she complained about Trejo's behavior constituted a retaliatory termination in violation of Section 296(7) of the NYHRL.

92.    Trejo's comments and behavior directly created and maintained the hostile work environment to which Plaintiff was submitted in violation of Section 296(6) of the NYHRL.

93.    The Individual Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees, were aware of Plaintiff's complaints and took no action upon them, and terminated Plaintiff in retaliation for her complaints, in violation of Sections 296(6) and 296(7) of the NYHRL.

94.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

95.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages,

interest, attorney's fees, and costs, as provided for under the NYHRL.

## FOURTH CAUSE OF ACTION
### (NYCHRL Discrimination against all Defendants)

96.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

97.    At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

98.    At all relevant times, the Corporate Defendants as a joint enterprise had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYCHRL.

99.    Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

100.    Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

101.    Section 8-107(7) of the NYCHRL provides that it is an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has [] opposed any practice forbidden under this chapter."

102.    Defendants violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

103.    This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

104.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and

offensive work environment for Plaintiff.

105.    The Corporate Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it.   Specifically, Plaintiff complained to management personnel about the abuse she was subject to, but management took no steps to stop it.  Indeed, rather than address the abuse against Plaintiff, Defendants required her to relocate, and therafter terminated her on a pretextual basis.

106.    The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 8-107(1)(a)(3) of the NYCHRL.

107.    The Corporate Defendants' termination of Plaintiff after she complained about Trejo's behavior constituted a retaliatory termination in violation of Section 8-107(7) of the NYCHRL.

108.    Trejo's comments and behavior directly created and maintained the hostile work environment to which Plaintiff was submitted in violation of Section 8-107(6) of the NYCHRL.

109.    The Individual Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees, were aware of Plaintiff's complaints and took no action upon them, and constructively terminated Plaintiff in retaliation for her complaints, in violation of Section 8-107(6) and (7) of the NYCHRL.

110.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

111.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages,

interest, attorney's fees, and costs, as provided for under the NYCHRL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL, the NYSHRL, and the NYCHRL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid compensation due under the FLSA and NYLL due to Defendants' policy of time-shaving;

d. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours of work, pursuant to 29 U.S.C. § 216;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours of work, pursuant to the NYLL;

g. An award of back pay and compensatory damages due under the NYSHRL and the NYCHRL;

h. An award of punitive damages due under the the NYSHRL and NYCHRL;

i. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiff as Representative of Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury

Dated:  August 28, 2020
        New York, New York

LEE LITIGATION GROUP, PLLC

By:    _____*/s/ C.K. Lee*_____
       C.K. Lee (CL 4086)
       Anne Seelig (AS 3976)
       148 West 24th Street, 8th Floor
       New York, NY 10011
       (212) 465-1180
       *Attorneys for Plaintiff, FLSA Collective Plaintiffs*
       *and the Class*